**WEISS & LURIE**
Jordan L. Lurie  (130013)
jlurie@weisslurie.com
Leigh A. Parker (170565)
lparker@weisslurie.com
Zev B. Zysman (176805)
zzysman@weisslurie.com
Joel E. Elkins (256020)
jelkins@weisslurie.com
10940 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024
Telephone:  (310) 208-2800
Facsimile:  (310) 209-2348

E-FILING

ADR

FILED Fee Paid

2008 JUL 30 P 2: 24

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

*Counsel for Plaintiff*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

ANDREW KNOPF, Derivatively on behalf of YAHOO! INC.,

Plaintiff,

v.

TERRY SEMEL, MICHAEL J. CALLAHAN, JERRY YANG, ROY J. BOSTOCK, RONALD W. BURKLE, ERIC HIPPEAU, VYOMESH JOSHI, ARTHUR H. KERN, ROBERT A. KOTICK, EDWARD R. KOZEL, GARY L. WILSON, and MAGGIE WILDEROTTER,

Defendants,

v.

YAHOO! INC., a Delaware Corporation,

Nominal Defendant.

CASE NO.

C08  03658  RS

CLASS ACTION

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

**DEMAND FOR JURY TRIAL**

**DERIVATIVE COMPLAINT**

1    Plaintiff, by his undersigned attorneys, alleges for his Verified Shareholder

2  Derivative Complaint, based upon, *inter alia*, the investigation made by and

3  through his attorneys, as follows:

4         1.    This is a stockholder derivative action brought by plaintiff on behalf

5  of nominal defendant Yahoo! Inc. ("Yahoo" or the "Company") against its Board

6  of Directors and senior current and former officers for their breaches of fiduciary

7  duty, gross mismanagement and other unlawful acts.

8         2.    As a result of defendants' actions, Chinese dissidents Wang Xiaoning

9  ("Wang") and Shi Tao ("Tao") (collectively referred to herein as the "Dissidents")

10  have been and are being subjected to grave violations of some of the most

11  universally recognized standards of international law, including prohibitions

12  against torture, cruel, inhuman, or other degrading treatment or punishment,

13  arbitrary arrest and prolonged detention, and forced labor, for exercising their

14  rights of freedom of speech, association, and assembly, at the hands of defendants

15  through Chinese officials acting under color of law in the People's Republic of

16  China (referred to herein as "the PRC" or "China").

17         3.    To facilitate the persecution of the Dissidents by the PRC, defendants

18  caused Yahoo, through its subsidiaries, to willingly provide Chinese officials with

19  access to private e-mail records, copies of email messages, e-mail addresses, user

20  ID numbers, and other identifying information about the Dissidents and the nature

21  and content of their use of electronic communications.  In addition, there are

22  positive indicators that various subsidiaries and affiliates of Yahoo, have also,

23  under the control and supervision of the defendants, continued to provide PRC

24  officials with this information.  These disclosures served and are continuing to

25  serve as the basis for the acts of persecution and torture that occurred and are

26  occurring as a direct result of the defendants' activities.

27         4.    As a direct result of defendants' collaboration with the PRC

28  authorities, in contravention of the United States and international human rights

**DERIVATIVE COMPLAINT**                                                    1

policies, the Company suffered substantial harm to its goodwill and reputation, including reputational harm arising out of several congressional hearings where several officers of the Company were berated and accused of concealing their knowledge of the Company's cooperation with PRC authorities, and has been subject to a civil lawsuit filed on behalf of the Dissidents in the United States District Court. Without the Court's intervention, the Company will continue its practices of cooperation with foreign authorities that systematically violate the United States and International standards for, among other things, the preservation of freedoms of speech, association and human rights.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different States. This action was not brought collusively to confer jurisdiction on a court of the United States that it would not otherwise have.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, many of the acts alleged and complained of occurred in this District, where Yahoo maintains its principal executive offices.

## PARTIES

7. Plaintiff, Andrew Knopf, owns and has owned shares of Yahoo at all times relevant herein.

8. Non-party dissident Wang is a citizen of the People's Republic of China. Wang was arrested and unlawfully and arbitrarily detained and prosecuted for publishing and circulating, through the Internet, electronic journals and articles that supported democratic reform in China, and for communicating with other democracy advocates. He is serving a ten-year sentence at Beijing Municipal No. 2 Prison, a forced labor prison for political prisoners, under severe conditions of prolonged confinement that are highly abusive in nature. He has been imprisoned

DERIVATIVE COMPLAINT                                                          2

1 for approximately five years.

2      9.     Non-party dissident Shi Tao is a citizen of the People's Republic of
3 China. Shi Tao was arrested and unlawfully and arbitrarily detained and
4 prosecuted for emailing messages, notes and journalistic dispatches describing
5 government restrictions on journalists imposed in connection with the 15 year
6 anniversary of the Tiananmen Square crackdown on democracy advocates. He has
7 been incarcerated for approximately four years at Chishan Prison of Hunan
8 Province, a high-security prison with a documented system of forced labor and
9 torture, for "divulging state secrets abroad."

10      10.    Defendant Yahoo is incorporated in Delaware with its corporate
11 headquarters located at 710 First Avenue, Sunnyvale, California, 94089. Yahoo
12 operates a business concerned primarily with facilitating the distribution of and
13 access to electronic communication and information. The company's major
14 activities include supplying and operating Internet service, web-based personal
15 e-mail accounts, news portals, and a search engine, all designed to facilitate
16 electronic communication and the sharing of information. By the nature of its
17 activities, Yahoo has access to and maintains identifying information about
18 individuals using its electronic services.

19      11.    Yahoo is the parent company and ultimate owner of the entire issued
20 share capital of Yahoo! Hong Kong Limited ("Yahoo Hong Kong"). During the
21 incidents related to the arrest and detention of Dissidents Wang and Shi Tao,
22 Yahoo exercised significant control over Yahoo! China ("Yahoo China"). It did so
23 via its organizational relationship with Yahoo Hong Kong (formerly Yahoo!
24 Holdings (Hong Kong) Limited), which was the parent company of Yahoo! China.
25 In addition, Yahoo exercised functional control and supervision over important
26 aspects of the operations of Yahoo China. This included supervision and control
27 of policy and legal decisions made by Yahoo China's legal team, including issues
28 and activities relevant to the subject of this complaint, where the Yahoo China

DERIVATIVE COMPLAINT                                                    3

legal team reported directly to and took direction from the legal team of Yahoo. Given both Yahoo's ownership and supervision of Yahoo Hong Kong and their relationship with the legal team of Yahoo China, Yahoo was uniquely positioned to review and approve the specific practices and policies that led to the arbitrary arrest, arbitrary detention and torture of the Dissidents. Prior to October 2005 and at the time of the allegations made in this petition relating to the Dissidents, there was a unity of ownership and a unity of interest between Yahoo Hong Kong and Yahoo.

12.    Matters related to the specific personal information disclosures of Dissidents Wang and Shi Tao within that time period were handled locally by the legal team of Yahoo China which reported directly to the legal team of Yahoo. This line of authority and accountability indicates that although Yahoo China was legally owned by Yahoo Hong Kong at the time of the disclosures, it was managed and controlled actually and ultimately by Yahoo. According to testimony provided to Congress by defendant Callahan, the decision to disclose Internet user information by Yahoo China may have been directly reviewed and approved by Yahoo.

13.    Defendant Terry Semel ("Semel") was Chairman and Chief Executive Officer of Yahoo until his resignation from both posts in June, 2007. During his tenure at Yahoo, Semel had earned over $500 million in salary and as a result of exercising options and selling Yahoo stock.

14.    Defendant Michael J. Callahan ("Callahan") is Executive Vice President, General Counsel and Secretary of the Company. As the head of Yahoo's legal department, which managed and controlled the activities of the legal team of Yahoo China, which permitted disclosures of personal information of Dissidents Wang and Shi Tao to the Chinese authorities, defendant Callahan is directly implicated in any failure of the Company to comply with its legal responsibilities.

DERIVATIVE COMPLAINT

4

15.    Defendant Jerry Yang ("Yang"), a co-founder of the Company, serves as its Chief Executive Officer and is a member of the Company's Board of Directors (the "Board"). Yang also serves as a director of Yahoo! Japan Corporation, Cisco Systems, Inc. and Alibaba.com Corporation.

16.    Defendant Roy Bostock ("Bostock") has served as a director of the Company since 2003 and as Chairman of the Board since January, 2008. Bostock is a member of the Compensation and the Nominating & Corporate Governance Committees of the Board. Bostock also serves on the board of Morgan Stanley and is Chairman of the board of directors of Northwest Airlines Corporation.

17.    Defendant Ronald W. Burkle ("Burkle") has served as a director of the Company since 2001. Burkle is a member of the Compensation Committee of the Board. Burkle is also Senior Vice President of the Washington Group and currently serves as a director of Yucaipa Equity Partners, L.P., Occidental Petroleum Corp. and KB Home Corporation.

18.    Defendant Eric Hippeau ("Hippeau") has served as a director of Yahoo since 1996. He is managing partner of Softbank Capital Partners, a venture capital firm. He also serves as a director of Starwood Hotels and Resorts Worldwide, Inc.

19.    Defendant Vyomesh Joshi ("Joshi") has served as a director of Yahoo since 2005. Joshi is a member of the Audit Committee of the Board. He is Executive Vice President of the Imaging and Printing Group at Hewlett-Packard.

20.    Defendant Arthur H. Kern ("Kern") has served as a director of Yahoo since 1996. He serves as Chairman of the Compensation Committee and is a member of the Nominating & Corporate Governance Committee of the Board. Kern was co-founder and Chief Executive Officer of American Media.

21.    Defendant Robert A. Kotick ("Kotick") has served as a director of Yahoo since 2003. Kotick is a member of the Nominating & Corporate Governance Committee of the Board. Since 1991, Kotick has been the Chairman

**DERIVATIVE COMPLAINT**                                                                 5

1    and Chief Executive Officer of Activision, Inc.

2        22.    Defendant Edward R. Kozel ("Kozel") has served as a director of

3    Yahoo since 2000. Kozel has served as Chairman of Skyreider, Inc. since

4    December, 2007. He is currently a director of Network Appliance, Inc.

5        23.    Defendant Gary L. Wilson ("Wilson") has served as a director of

6    Yahoo since 2001. Wilson is a member of the Audit Committee of the Board. He

7    served as Chairman of the Board of Directors of Northwest Airlines Corporation

8    from 1997 to 2007. Wilson also serves as a director CB Richard Ellis Group, Inc.

9        24.    Defendant Maggie Wilderotter ("Wilderotter") has served as a

10   director of Yahoo since 2007. Wilderotter serves as Chairman of the Audit

11   Committee of the Board. Since 2006, she has been Chairman of the Board of

12   Directors and Chief Executive Officer of Citizens Communications. Wilderotter

13   also serves as a director of the Xerox Corporation and the Tribune Company.

14       25.    The individuals listed above in ¶¶ 15 through 24 are collectively

15   referred to as the "Director Defendants."

16       26.    (a)    The defendants, by reason of their status as officers and

17   executives or members of the Board, have and had the power and influence and did

18   in fact control and influence and cause Yahoo to engage in the unlawful acts and

19   conduct complained of herein. Each of the defendants is liable as a direct

20   participant in, and aider and abetter of, the wrongs complained of herein.

21              (b)    By reason of their positions and because of their ability to

22   control the business and corporate affairs of Yahoo at all relevant times, the

23   defendants owe and have owed Yahoo and its shareholders the highest fiduciary

24   obligations of fidelity, trust, loyalty, and due care, and were and are required to use

25   their utmost ability to control and manage Yahoo in a fair, just, equitable and

26   lawful manner. In addition, each director of Yahoo owes and has owed to Yahoo

27   and its shareholders the fiduciary duties to exercise due care and diligence in the

28   administration of the affairs of Yahoo, compliance with contractual and legal

1 obligations, and in the use and preservation of its property and assets, and the

2 highest obligations of good faith and fair dealing.

3    27.    The Director Defendants are charged with numerous responsibilities

4 in managing the Company's everyday business and affairs.  Specifically, pursuant

5 to the Company's Corporate Governance Guidelines, the Board's responsibilities

6 include monitoring "the effectiveness of policy and decision making both at the

7 Board and management level, with a view to enhancing long-term stockholder

8 value."

9    28.    The Director Defendants serving on the Company's Audit Committee,

10 including defendants Wilderotter (Chairman), Joshi, and Wilson, are charged with

11 specific oversight responsibilities.  As set forth in the Audit Committee's charter,

12 the Committee's role is to:

13    [A]ssist Board oversight of (i) the integrity of the Company's financial
     statements, (ii) the accounting and financial reporting processes of the

14    Company and the audits of the financial statements of the Company, (iii) the
     Company's compliance with legal and regulatory requirements, (iii) the

15    independent auditors' qualifications and independence, and (iv) the
     performance of the Company's internal audit function and independent

16    auditors.

17    29.    The defendants, because of their positions of control and authority as

18 executive officers and/or directors of Yahoo, were able to and did, directly and

19 indirectly, control the matters and transactions complained of herein.  These

20 defendants have and have had the duty to exercise reasonable control and

21 supervision over the officers, employees, agents, business and operations of the

22 Company; to be and remain informed as to how the Company was operating and,

23 upon receiving notice or information of an imprudent, questionable or unsound

24 decision, condition, or practice, make reasonable inquiry and, if necessary, make

25 all reasonable remedial efforts; and to conduct the affairs of the Company to

26 strictly comply with all applicable laws and regulations, provide the highest quality

27 services, and maximize the profitability and reputation of the Company, for the

28 benefit of its shareholders.

## SUBSTANTIVE ALLEGATIONS

### Background

30.    Journalists, human rights advocates, democracy supporters and other Internet users in China have been subjected to a pattern of arbitrary criminal prosecution, imprisonment, and torture is a result of their expression of ideas that are perceived to be in opposition to the positions or policies of the government of the PRC on a variety of politically disfavored topics, such as the Tiananmen Square massacre, democratic reform, human rights advocacy, opposition to corruption or disagreement with government policies generally.

31.    In or around the Spring of 2002, the defendants caused Yahoo to sign an official, voluntary agreement in the form of the Internet Society of China's "Public Pledge on Self-Discipline for the Chinese Internet Industry" ("the Public Pledge"). The Internet Society of China is a government-affiliated professional organization, and the Public Pledge is described as being voluntary, not required by government regulation, although pressures to sign the Pledge and to abide by its requirements as a prerequisite for doing business in China are considerable. By signing the Public Pledge, Yahoo voluntarily agreed to help monitor and censor electronic communication use involving information that, according to the Internet Society of China, could "jeopardize state security" or "disrupt social stability," and to report any offending on-line expression or communication to PRC authorities.

32.    Thus, by signing the Public Pledge, Yahoo effectively enabled the PRC to identify and target dissidents, through the Internet monitoring and censorship program, who faced a well documented pattern of systematic arbitrary arrest and prolonged detention, incommunicado detention, extrajudicial killings, torture, cruel, inhuman or degrading treatment and punishment, and forced labor. Sometimes, these abuses lead to death in custody. Despite Chinese laws prohibiting these violations of both domestic law and international human rights

1   standards, authorities carry out these abuses under color of law within a culture of

2   impunity.

3       33.    A number of human rights organizations responded to news of the

4   Company signing this pledge by alerting it that by helping the censors, and by

5   identifying people who could be accused of anti-government speech or

6   communication, the defendants would be placing many innocent individuals, who

7   were merely expressing their views or communicating with others, at risk of an

8   arbitrary arrest, prolonged arbitrary detention, forced labor, and torture as a result

9   of their lawful exercise of free speech and free association rights.

10      34.    On July 30, 2002, Human Rights Watch sent a letter to defendant

11  Semel, expressing concern that Yahoo signed the Public Pledge, and alerting

12  Yahoo of the dangers to Internet users associated with the Company's cooperation

13  with monitoring and censoring efforts.  This letter notified Yahoo that it was

14  common in China for people to be arbitrarily arrested for expressing views that

15  differ from those of the state, and provision of information not deemed politically

16  acceptable, may be considered "harmful" and may result in a prison sentence

17  mistreatment, torture and execution.  The letter also stated that, by upholding the

18  Public Pledge, Yahoo would risk assisting such human rights violations, clearly

19  pointing out that "there is a strong likelihood that Yahoo will assist in furthering

20  such human rights violations" through support of these monitoring and censorship

21  activities.  The letter urged Yahoo to withdraw from the Public Pledge and to state

22  its support for internationally recognized standards of free expression.  Human

23  Rights Watch also sent copies of this letter to defendant Yang, Chris Castro, Chief

24  Communications Officer and Senior Vice President of Yahoo, John Costello, Chief

25  Global Marketing Officer of Yahoo, and Jon Sobel, Vice President, General

26  Counsel, and Secretary of Yahoo.

27

28

35.    On November 26, 2002, Amnesty International published "State Control of the Internet in China," documenting Chinese officials' use of electronic evidence to prosecute Chinese democracy advocates for exercising their freedom of expression over the Internet. This report, as well as the numerous press releases and news articles publicizing it, noted that Yahoo had signed the Public Pledge and pointed out that compliance with the pledge could lead to violations of international human rights norms. Furthermore, the report documented that 21 prisoners in China had already suffered arbitrary arrest and prolonged arbitrary detention, torture, and death in custody as punishment for the crime of using the Internet to exercise their right to freedom of expression, and to communicate and obtain information concerning human rights or democracy.

36.    Particularly in light of these notifications, along with general and well-publicized documentation of Chinese human rights abuses, including those in the U.S. Department of State Country Reports on human rights abuses dealing with China, and other nations' human rights practices, defendants had every reason to know and understand that the electronic communication user information they possessed, if provided to the Chinese authorities, could be used to assist in the infliction of such abuses as arbitrary arrest, torture, cruel, inhuman, or other degrading treatment, and prolonged detention and/or forced labor, to punish what might be viewed by authorities as pro-democracy or human rights activities.

**Specific Facts - Wang**

37.    From 2000 to 2001, Wang edited *Free Forum of Political Reform,* and from 2001 to 2002, he edited *Commentaries on Current Political Affairs,* electronic journals containing articles written by Wang and others calling for democratic reform and a multi-party system in China.

38.    During this same time period, Wang posted additional pro-democracy articles on websites in China and abroad. From 2000 to 2001, Wang published his

journals and articles on an e-mail subscriber list, "aaabbbccc" Yahoo! Group.

39.    In 2001, Chinese Internet administrators noticed the political content of Wang's writings and blocked him from sending messages to the "aaabbbccc" Yahoo! Group.

40.    With this means of dissemination blocked to him, Wang continued to publish his writings by electronically sending his journal on an anonymous basis to individual e-mail addresses until he was arbitrarily detained in 2002.

41.    Yahoo Hong Kong provided identifying information to police, linking Wang to his anonymous e-mails and other pro-democracy Internet communications.

42.    On September 1, 2002, as a result of defendants' compliance with the PRC authorities, approximately ten security police raided Wang's home and arbitrarily detained him without informing him or his family of the charges against him.  On the same day, police searched his home and seized two computers, personal computer files, e-mail records, written notes, address books, and manuscripts.

43.    Wang was not formally arrested and charged until almost a month later, on September 30, 2002.

44.    From September 1, 2002 to May 2004, Wang was held at the Detention Center of Beijing State Security Bureau, where he suffered severe abuse at the hands of the prison officials.  These abuses had severe physical and psychological effects on Wang.  When his wife was finally able to see him approximately six months after his arbitrary and unlawful detention, Wang was very weak, showed no emotional expression, and exhibited severe respiratory difficulties.

45.    On July 25, 2003, the Beijing Municipal First Intermediary People's Court tried Wang on charges of "incitement to subvert state power," advocating the establishment of an alternative political party, and communicating with an overseas organization the Chinese government considers "hostile."

46.    On September 12, 2003, after almost thirteen months of arbitrary detention, the court sentenced Wang to ten years in prison and two additional years of deprivation of political rights.

47.    The court specifically relied on evidence supplied by Yahoo Hong Kong to identify and convict Wang.  The judgment noted that Yahoo Hong Kong informed investigators that a mainland China-based e-mail account (bxoguh@yahoo.com.cn) was used to set up Wang "aaabbbccc" Yahoo! Group, and that the e-mail address ahgq@yahoo.com.cn, which Wang used to post e-mails to that Yahoo! Group, was also a mainland China-based account maintained by Wang.  The Company's subsidiary was cited in the court decision as instrumental in causing Wang's arrest and criminal prosecution.

48.    In May 2004, authorities transferred Wang to the Beijing Prison No. 2.  Upon his transfer, Wang appealed his case several times but the courts rejected his applications.

49.    Wang has continued to suffer severe physical, psychological, and emotion abuse as a result of the court's decision that his writings and beliefs were subversive.

**Specific Facts - Shi Tao**

50.    From February 2002 to May 2004, Shi Tao worked as a reporter and head of the Editorial Department for *Contemporary Business News (Dangdai Shangbao)* in Changsha, Hunan Province, China.  From May 2004, until his arbitrary arrest and prolonged arbitrary detention on November 23, 2004, Shi Tao

DERIVATIVE COMPLAINT                                                              12

1    worked as a freelance journalist, in Taiyuan, Shanxi Province, China.

2    51.    As a reporter, Shi Tao wrote about corruption by government officials

3    in China. As freelance writer, he published numerous political commentaries

4    calling for democratic reform of the Chinese government, as well as several books

5    of poetry.

6    52.    In April 2004, Shi Tao published an essay, "The Most Disgusting

7    Day," that criticized the Chinese government for detaining an activist member of

8    the Tiananmen Mothers, an organization of mothers whose children were killed by

9    the Chinese government in its 1989 crackdown on the internal democracy

10    movement and demonstrators in Tiananmen Square.  Shi Tao published the essay

11    under a pseudonym on an Internet forum.

12    53.    On April 20, 2004, at a staff meeting at the offices of the publication

13    *Contemporary Business News,* Shi Tao was advised of a document sent by the

14    Chinese Communist Party's Central Propaganda Bureau, alerting journalists to the

15    security concerns and government preparations in anticipation of the upcoming

16    15th anniversary of the 1989 Tiananmen Square massacre.  Later that night, Shi

17    Tao sent his notes from this staff meeting, under an alias, to the New York-based

18    Web site *Democracy Forum, (Minzhu Tongxun),* using his personal Yahoo e-mail

19    account.

20    54.    Between April 20, 2004 and November 23, 2004, the defendants

21    caused Yahoo Hong Kong to provide Chinese officials and investigators

22    information linking Shi Tao to the anonymous email he sent to Democracy Forum

23    including the account holder information for the email address, the IP address and

24    physical address of the computer from which the email was sent, and the date and

25    time the email was sent and its contents.  Defendants also caused Yahoo Hong

26    Kong to supply to the prosecuting officials the physical address of the office where

27    the offending electronic communication took place, thereby linking the anonymous

email message to Shi Tao.

55.    On November 23, 2004, as a result of defendants' compliance with the PRC authorities, Shi Tao was detained mid-day in a street near his home in Taiyuan, Shanxi Province.  His house was subsequently searched and police seized his computer, papers, and other property without a warrant.

56.    After 21 days of detention, Shi Tao was formally arrested and charged on December 14, 2004, but the charges were not made public.

57.    Up to and during his trial, Shi Tao was held at Changsha Detention Center, where officials are known to physically abuse and torture detainees on a regular basis.

58.    On March 11, 2005, the Changsha Municipal Intermediate People's Court in Hunan Province tried Shi Tao in a closed hearing.  To no one's surprise, Shi Tao's court-appointed attorney entered a guilty plea on Shi Tao's behalf.

59.    On April 30, 2005, the court sentenced Shi Tao to ten years imprisonment for "illegally providing state secrets overseas."  In its verdict, the court specifically made reference to and cited the Internet user information that the Defendants had caused to be supplied to Chinese officials as evidence against Shi Tao:

> "Account holder information furnished by Yahoo! Holdings (Hong Kong) Ltd., which confirms that for IP address 218.76.8.201 at 11:32:17 p.m. on April 20, 2004, the corresponding user information was as follows: user telephone number 0731-4376362 located at the Contemporary Business News office in Hunan."

60.    On May 4, 2005, Shi Tao appealed the judgment to the Hunan Province High People's Court.  The court denied his appeal on June 2, 2005.

61.    On March 30, 2006, Shi Tao, through his legal representative, filed a formal complaint with the Hong Kong Privacy Commissioner, requesting an investigation of the Company's actions divulging Shi Tao's private information.

The Privacy Commissioner accepted the complaint and conducted an investigation. The Privacy Commissioner's report, made public on March 14, 2007, concluded that because Hong Kong's privacy ordinance only regulates the actions of companies in Hong Kong and in Shi Tao's case the information was disclosed in China to Chinese officials, his office did not have jurisdiction over the incident.

62.    Since his appeal was denied in June 2005, Shi Tao has been incarcerated at Chishan Prison of Hunan Province, Area 6, a high-security prison known for holding political prisoners and violent criminals serving long sentences. That prison uses a severe system of forced labor, in which prisoners work in dark, dust-filled factories, starting before dawn and working for sixteen hours or more, in conditions intended to destroy their physical and mental capacities. Shi Tao has served as a forced laborer in these workshops.

63.    As a result of his prolonged detention at the Chishan Prison, Shi Tao has suffered extreme physical and psychological injuries.

64.    In October 2005, the Committee to Protect Journalists named Shi Tao as one of three annual recipients of its International Press Freedom Award. Amnesty International has declared Shi Tao a prisoner of conscience as he was imprisoned solely for peacefully exercising his right to freedom of expression and opinion. The United States Department of State Country Report on Human Rights Practices in China for 2006, published on March 6, 2007, names Shi Tao as a political prisoner, imprisoned for exercising the right to free expression.

65.    In October 2007, the House Foreign Affairs Committee approved legislation making it a crime to aid countries in limiting Internet access to restrict human rights, citing Yahoo's role in Shi Tao's arrest.

**Subsequent Events**

66.    As a result of the Company's cooperation with the Chinese authorities, on or about April 17, 2007, the Dissidents' relatives brought an action

1   (the "Action") in the United States District Court for the Northern District of
2   California against the Company and several of its subsidiaries alleging violations
3   of the Alien Tort Statute, 28 U.S.C. § 1350, the Torture Victim Protection Act, 28
4   U.S.C. § 1350, the Electronic Communications Privacy At, 18 U.S.C. § 2701, 18
5   U.S.C. § 2702, and 18 U.S.C. § 2511 and California state laws, claiming that the
6   Company willingly provided Chinese officials with access to private e-mail
7   records, copies of email messages, e-mail addresses, user ID numbers, and other
8   identifying information about the dissidents and the nature and content of their use
9   of electronic communications.

10      67.    Further, on November 6, 2007, the Committee on Foreign Affairs of
11  the U.S. House of Representatives (the "Foreign Affairs Committee" or the
12  "Committee") held the second of its two congressional hearings (the "Hearing") on
13  Capitol Hill to address Yahoo's role in the imprisonment of the Dissidents.  The
14  Hearing was called by Chairman Rep. Tom Lantos ("Lantos") to hear testimony
15  about the circumstances under which Yahoo cooperated with the Chinese
16  authorities in relinquishing information that led to the ultimate arrest, prosecution
17  and imprisonment of the Dissidents, and the inconsistencies in the Congressional
18  testimony of General Counsel Michael Callahan ("Callahan"), arising out of the
19  same matter, in 2006 (the "2006 Hearing").

20      68.    In his opening remarks of the Hearing, Lantos stated that "A company
21  of Yahoo's resources should have taken every conceivable step to prevent the
22  automatic compliance with a request from the Chinese police apparatus.  To this
23  day, Yahoo has failed to change any of its practices in order to prevent such
24  collaboration."  Lantos further chastised defendants Yang and Callahan, stating
25  that "While technologically and financially you are giants, morally you are
26  pygmies.  This testimony has been an appallingly disappointing performance."
27  ///
28

**DERIVATIVE COMPLAINT**                                                                16

69.  At the Hearing, Yang apologized to Gao Qinsheng, the mother of Shi Tao, and to Yu Lin, the wife of Wang for the Dissidents' unlawful incarceration.

70.  At the 2006 Hearing, defendant Callahan had told Congress that neither he nor the Company knew about China's probe when the Company surrendered the data. During the Hearing, he apologized for not revealing that he had later learned more about the case. Specifically, Callahan testified that:

> At the time of my testimony in 2006, it was my understanding that the Shi Tao demand contained no information regarding the specific details of the investigation, including no details regarding the name, profession, activities, or even charges under investigation, and that is how I testified. I now know that the demand did contain additional information – that the investigation related to disclosure of state secrets. If I had had this additional information, I would have made it clear that we were aware of the general law in question though not the specific nature of the case and not the political nature of the case. And I apologize to you today, as I have apologized to your staff a few weeks ago, for not coming back to the Committee once I realized in October 2006 that the demand contained this additional information.

Commenting on Callahan's testimony, Chairman Lantos stated that:

> "While Mr. Callahan may not have known the relevant facts, other Yahoo employees, in fact, did know the nature of the Chinese investigation against Shi Tao prior to our committee hearing." Lantos called the Company's actions "spineless and irresponsible," and further stated that "Yahoo claims that this is just one big misunderstanding. Let me be clear – this was no misunderstanding. This was inexcusably negligent behavior at best, and deliberately deceptive behavior at worst."

71.  Also at the Hearing, Rep. Christopher Smith encouraged Yahoo to settle the Action. Specifically, he urged Yahoo to "Settle it and settle it generously in their favor."

72.  On November 9, 2007, the parties to the Action filed a joint stipulation of dismissal of all claims, based on a private settlement understanding. The terms of the settlement are undisclosed, but the Company agreed to pay the attorneys fees for the Dissidents and provide financial, humanitarian and legal support to their families.

DERIVATIVE COMPLAINT
17

## DERIVATIVE ALLEGATIONS

73.    Plaintiff brings this complaint derivatively in the right and for the benefit of Yahoo to redress injuries suffered and to be suffered by Yahoo as a direct result of the violations of fiduciary and other common law duties by the defendants to Yahoo and its public shareholders.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

74.    Plaintiff will adequately and fairly represent the interests of Yahoo and its public shareholders in enforcing and prosecuting their rights.

75.    Plaintiff demanded that Yahoo's Board of Directors bring this or similar litigation in a letter addressed to the Board in November, 2007.  Since that time, although Yahoo's Board  has acknowledged the receipt of Plaintiff's demand by a letter dated December 20, 2007, and assured Plaintiff's counsel that appropriate consideration of and a response to the demand would be made, defendants have not taken any of the actions demanded in that letter. Subsequently, on March 28, 2008, Charles M. Carberry of Jones Day wrote to Plaintiff's counsel that the Audit Committee of the Board "has undertaken an investigation," and requested, among other things, that Plaintiff provide proof of Plaintiff's ownership of Yahoo stock.  Plaintiff complied with this request by a letter dated April 4, 2008.  Defendants have not had any further communication with Plaintiff or his counsel, nor have they taken any action to remedy the damages caused to Yahoo by the defendants' breaches of fiduciary duties and/or aiding and abetting thereof.  Plaintiff submits that the Audit Committee, which is directly implicated in its failure to detect and deter the illegal conduct alleged herein, cannot conduct an adequate and independent investigation as Plaintiff demands. Under these circumstances, the Board of Directors' inaction and silence can only be viewed as a refusal of Plaintiff's demand.  The Board's refusal of Plaintiff's demand is wrongful.  The Board's wrongful refusal of Plaintiff's demand, along

1   with the following, among other facts, demonstrate that the Board is not

2   sufficiently disinterested or independent to control this or similar litigation:

3       (i)    The Company's Board has proven itself to be unwilling to bring

4   remedial action against wrongdoers that have caused the

5   Company substantial harm regarding conduct of which the

6   Board was aware through, among other things, Human Rights

7   Watch's July 30, 2002 letter warning Yahoo that the

8   Company's signing of the Public Pledge the Company risked

9   assisting human rights violations and which was sent to, among

10   others, defendants Semel and Yang. The Company was forced

11   to pay a significant monetary judgment as a result of the Action.

12   The Board made no effort to recover any of these damages from

13   the known wrongdoers;

14       (ii)    There was a sustained and systematic failure of the Board to

15   exercise oversight, in that the directors knew or should have

16   known of violations of international and the U.S. law, took no

17   steps in an effort to prevent or remedy the situation, and that

18   failure to take any action for such an inordinate amount of time

19   resulted in the unlawful arrest, prosecution and torture of the

20   Dissidents, several Congressional hearings admonishing the

21   Company's conduct and substantial corporate losses. The

22   directors' decision to not act was not made in good faith and

23   was contrary to the best interests of the Company;

24       (iii)    As members of the Audit Committee, defendants Wilderotter,

25   Joshi and Wilson are directly implicated in any failure of the

26   Company to comply with its legal responsibilities;

27

28   ///

**DERIVATIVE COMPLAINT**                                                                19

(iv)    As recipients of Human Right Watch's July 30, 2002 letter, Defendants Yang and Semel are directly implicated in any failure of the Company to comply with its legal responsibilities;

(v)    The acts complained of herein constitute violations of fiduciary and common law duties owed by the Director Defendants and these acts are incapable of ratification;

(vi)    The defendants intentionally breached and/or recklessly and/or with gross negligence disregarded their fiduciary duties, choosing to cause Yahoo, through its subsidiaries, to provide confidential information, available only to the Company and its subsidiaries, to Chinese officials;

(vii)    The Board has failed to commence any action against the principal wrongdoers despite the passage of time since their wrongful acts were revealed;

(viii)    The known principal wrongdoers are in a position to, and do, dominate and control the Yahoo's Board, paying them high annual and monthly fees to assure their compliance. Thus, the Board could not exercise independent objective judgment in deciding whether to bring this action nor vigorously prosecute this action;

(ix)    The acts complained of herein are illegal and unreasonable and thus are incapable of ratification;

(x)    In order to bring this action for breach of fiduciary and common law duties, the members of Yahoo's Board would have been required to sue themselves and/or their fellow current or former directors, including defendants Semel, Yang, Wilderotter, Joshi and Wilson, and allies in the top ranks of the Company,

1
2
3
4
5

including defendant Callahan, with whom they are well acquainted and with whom they have entangling alliances, interests, and dependencies, which they would not do. They therefore would not be able to vigorously prosecute any such actions; and

6
7
8
9
10
11
12

(xi)    The Director Defendants receive substantial benefits, and other emoluments by virtue of their membership on the Board and their control of Yahoo. Bringing an action or even adequately investigating other directors, who have the power to terminate a director's employment, would not likely occur. The defendants are incapable of exercising independent objective judgment in deciding whether to bring this action.

13
14

## COUNT I
### (Breach of Fiduciary Duties)

15
16
17

76.    Plaintiff incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

18
19

77.    Each defendant owed Yahoo and its public shareholders the highest duties of loyalty, honesty, and care in conducting their affairs.

20
21
22
23

78.    At a minimum, to discharge these duties, each defendant should have exercised reasonable and prudent supervision over the management, policies, practices, controls and financial affairs of Yahoo. By virtue of these obligations, each defendant was required, *inter alia*:

24
25

a.    to exercise reasonable control and supervision over the officers, employees, agents, business, and operations of Yahoo;

26
27
28

b.    to be and remain informed as to how Yahoo was operating and, upon receiving notice or information of an imprudent, questionable, or unlawful

DERIVATIVE COMPLAINT

21

1  decision, condition, or practice, make reasonable inquiry and, if necessary, make

2  all reasonable remedial efforts; and

3       c.      to conduct the affairs of Yahoo in a lawful manner and in compliance

4  with government rules and regulations.

5       79.     The defendants knowingly, intentionally, recklessly or negligently

6  breached their fiduciary duties and, thereby, caused the Company to commit illegal

7  acts, waste its assets, and impair its reputation and credibility for no legitimate

8  business purpose, as a result of which Yahoo has been and continues to be

9  substantially damaged.

10      80.     Accordingly, Plaintiff seeks on behalf of Yahoo monetary damages,

11 injunctive remedies, and other forms of equitable relief.

12                          **COUNT II**

13                       **(Indemnification)**

14

15      81.     Plaintiff incorporates by reference and realleges each and every

16 allegation set forth above as if fully set forth herein.

17      82.     As alleged herein, the defendants, acting as officers and/or directors of

18 Yahoo and, therefore, as its agents, breached their fiduciary duties to Yahoo and its

19 public shareholders.

20      83.     Yahoo has suffered significant and substantial injury as a direct result

21 of the defendants' knowing, intentional, or reckless breaches of their fiduciary

22 duties as alleged herein.  Plaintiff, on behalf of the Company, seeks relief from the

23 defendants on the theory of indemnity for all such damages.

24      **WHEREFORE**, Plaintiff prays for judgment as follows:

25      A.      Declaring that the defendants have breached their fiduciary duties as

26 alleged herein;

27

28 ///

**DERIVATIVE COMPLAINT**                                                    22

B.      Directing defendants, jointly and severally, to account for all losses and/or damages sustained by Yahoo by reason of the acts and omissions complained of herein and remit those sums to Yahoo;

C.      Requiring defendants to remit to Yahoo all of their salaries, fees, bonuses, stock awards, and other compensation received for the periods when they breached their duties;

D.      Ordering that defendants and those under their supervision and control refrain from further violations as are alleged herein and to implement corrective measures that will rectify all such wrongs as have been committed and prevent their recurrence;

E.      Awarding pre-judgment and post-judgment interest as allowed by law;

F.      Awarding Plaintiff's attorneys' fees, expert fees, consultant fees, and other costs and expenses; and

G.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all matters so triable.


Dated: July 29, 2008

WEISS & LURIE

By _____

Jordan L. Lurie
10940 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024
Telephone:   (310) 208-2800
Facsimile:   (310) 209-2348

DERIVATIVE COMPLAINT

23

**WEISS & LURIE**
Joseph H. Weiss
Ilya Nuzov
551 Fifth Avenue
New York, NY 10176
Telephone:  (212) 682-3025
Facsimile:   (212) 683-3010

**STULL STULL & BRODY**
Jules Brody
6 West 45th Street
New York, NY 10017
Telephone:  (212) 687-7230
Facsimile:   (212) 490-2022

*Counsel for Plaintiff*

## VERIFICATION

I, Andrew Knopf, declare under penalty of perjury as follows: I have read the annexed Verified Shareholder Derivative Complaint, know the contents thereof and the same are true and accurate to the best of my personal knowledge, information and belief, based upon the investigation of my counsel.

Executed this 23 day of July, 2008.

_____
ANDREW KNOPF

℀ JS 44 (Rev. 12/07) (cand rev 1-16-08)   **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**

Andrew Knopf, Derivatively on behalf of YAHOO! INC.,

**DEFENDANTS**

Terry Semel, Michael J. Callahan, Jerry Yang, Roy J. Bostock, Ronald W. Burkle, et al., and Nominal Defendant YAHOO! INC, a Deleware Corp.

**(b)** County of Residence of First Listed Plaintiff Bergen County, New Jersey
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

WEISS & LURIE
10940 Wilshire Boulevard, 23rd Floor
Los Angeles, CA 90024
Telephone: (310) 208-2800

Attorneys (If Known)

Unknown

E-FILING
ADR
RS

C08   03658

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 740 Railway Labor Act | | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | Security Act | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus – | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1391

Brief description of cause:
COUNT I (BREACH OF FIDICIUARY DUTIES); COUNT II (INDEMNIFICATION)

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23
DEMAND $ NOT DETERMINED
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)
☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE

DATE
July 29, 2008

SIGNATURE OF ATTORNEY OF RECORD