**E-Filed 3/17/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREW KNOPF,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TERRY SEMEL, MICHAEL J. CALLAHAN, JERRY YANG, ROY J. BOSTOCK, RONALD W. BURKLE, ERIC HIPPEAU, VYOMESH JOSHI, ARTHUR H. KERN, ROBERT A. KOTICK, EDWARD R. KOZEL, GARY L. WILSON, and MAGGIE WILDEROTTER,<br><br>　　　　　Defendants.<br><br>　　v.<br><br>YAHOO! INC., a Delaware corporation,<br><br>　　　　　Nominal Defendant. | Case Number C 08-3658 JF (PVT)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Docket No. 49 |

　　　　Defendants Terry Semel, Michael J. Callahan, Jerry Yang, Roy J. Bostock, Ronald W. Burkle, Eric Hippeau, Vyomesh Joshi, Arthur H. Kern, Robert A. Kotick, Edward R. Kozel, Gary L. Wilson, and Maggie Wilderotter (collectively, "Defendants"), past and present members of the Board of Directors of nominal defendant Yahoo! Inc. (Yahoo!), move to dismiss the First Amended Shareholder Derivative Complaint ("FAC") of Plaintiff Andrew Knopf ("Plaintiff") pursuant to Fed. R. Civ. P. 23.1 and Fed. R. Civ. P. 12(b)(6). The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on March 12, 2010. For the reasons discussed below, the motion will be granted, with leave to

amend.

# I. BACKGROUND

**A. Yahoo! Inc.'s operations in China**

Yahoo! is an internet service company that operates web-based personal email accounts, news portals and a search engine. FAC ¶ 8. Yahoo! is the parent company and owner of the entire issued share capital of Yahoo! Hong Kong Limited ("Yahoo! Hong Kong"). *Id.* ¶ 9. Yahoo! Hong Kong operated business in China through its wholly-owned subsidiary Yahoo! China ("Yahoo! China"). *Id.* "Yahoo! exercised significant control over Yahoo! China via its organizational relationship with Yahoo! Hong Kong" during the relevant time period, including "supervision and control of policy and legal decisions made by Yahoo! China's legal team." *Id.*

Plaintiff alleges that in 2002, Yahoo! signed an official, voluntary agreement with the People's Republic of China ("PRC"), known as the "Public Pledge on Self-Discipline for the Chinese Internet Industry" ("the Public Pledge"). *Id.* ¶ 28. Plaintiff claims that by signing the Public Pledge, "Yahoo! voluntarily agreed to help monitor and censor electronic communication use involving information that, according to the Internet Society of China, could 'jeopardize state security' or 'disrupt social stability,' and to report any offending on-line expression or communication to [government] authorities." *Id.* Plaintiff asserts further that the Public Pledge "effectively enabled the PRC to identify and target dissidents, through the Internet monitoring and censorship program, who faced a well documented pattern of systematic arbitrary arrest and prolonged detention, incommunicado detention, extrajudicial killings, torture, cruel, inhuman or degrading treatment and punishment, and forced labor." *Id.* ¶ 29.

Plaintiff alleges that human rights organizations such as Human Rights Watch discouraged Yahoo! from signing the Public Pledge because "there is a strong likelihood that Yahoo! will assist in furthering...human rights violations." SAC ¶ 31. Plaintiff claims that on November 26, 2002, Amnesty International published a report documenting the Chinese government's use of electronic evidence to prosecute political dissidents. *Id.* ¶ 32. According to Plaintiff, "numerous press releases and news articles publicizing it, noted that Yahoo! had signed the Public Pledge and pointed out that compliance with this pledge could lead to violations of

2

international human rights norms." *Id.*  Plaintiff alleges that "in light of these notifications, along with general and well-publicized documentation of Chinese human rights abuses...defendants had every reason to know and understand that the electronic communication user information they possessed, if provided to the Chinese authorities, could be used to assist in the infliction of such abuses..." *Id.* ¶ 33.

In 2005, Yahoo! sold Yahoo! China to a Chinese company, Alibaba.com Corporation ("Alibaba"), and invested $1 billion in Alibaba in exchange for a forty percent stake in the company. *Id.* ¶ 9, 11.  Defendant Yang, who is a co-founder, director, and former Chief Executive Officer of Yahoo!, became a director of Alibaba's parent company, Alibaba Group Holding Limited.  Accordingly, during the relevant time period, Yahoo! was effectively a forty percent owner of Yahoo! China, through its minority stake in Alibaba. *Id.* ¶ 9.

**B. Prosecution and imprisonment of Shi Tao**

In April 2004, Shi Tao, a reporter and head of the Editorial Department of *Contemporary Business News (Dangdai Shangbao)* in Changsha, Hunan Province, published an essay, "The Most Disgusting Day." *Id.* ¶ 34, 36.  The essay criticized the Chinese government for detaining an activist member of the Tiananmen Mothers, an organization of mothers whose children were killed by the Chinese government in 1989. *Id.* ¶ 36.  Shi Tao published the essay under a pseudonym on an internet forum. *Id.*  On April 20, 2004, at a staff meeting, Shi Tao was advised of a document from the Chinese Communist Party's Central Propaganda Bureau alerting journalists to security concerns and government preparations in anticipation of the upcoming fifteenth anniversary of the 1989 Tiananmen Square massacre. *Id.* ¶ 37.  Using an alias, Shi Tao sent notes from the staff meeting to the New York-based Web site *Democracy Forum, (Minzhu Tongxun)* using his personal Yahoo! email account. *Id.*

Plaintiff alleges that between April and November 2004, Yahoo! Hong Kong provided Chinese government officials and investigators with information linking Shi Tao to the anonymous email sent to *Democracy Forum*. *Id.* ¶ 38.  The information included Shi Tao's email address, the IP address and physical address of the computer from which the email was sent, the date and time the email was sent, and the content of the email. *Id.*  Plaintiff claims that

Yahoo! Hong Kong also provided prosecuting officials with the physical address of the office from which the electronic communication took place, thus linking the anonymous email to Shi Tao. *Id.* On November 23, 2004, Shi Tao was detained near his home in Taiyuan, Shanxi Province. ¶ 39. His home was searched and police seized his computer, papers, and other property without a warrant. *Id.* After twenty-one days of detention, Shi Tao was arrested and charged. *Id.* ¶ 40. On March 11, 2004, Shi Tao was tried in a closed hearing, and his court-appointed attorney entered a guilty plea on his behalf. *Id.* ¶ 42. On April 30, 2005, the court sentenced Shi Tao to ten years of imprisonment for "illegally providing state secrets overseas." *Id.* ¶43. Plaintiff alleges that the Chinese court specifically cited information provided by Yahoo! in its verdict. *Id.* ¶ 43 ("Account holder information furnished by Yahoo! Holdings (Hong Kong) Ltd., which confirms that for IP address 218.76.8.201 at 11:32:17 p.m. on April 20, 2004, the corresponding user information was as follows: user telephone number 0731-4376362 located at the Contemporary Business News office in Hunan.").

On May 4, 2005, Shi Tao appealed the judgment to the Hunan Province High People's Court. The appeal was unsuccessful. *Id.* ¶ 44. Plaintiff alleges that since June 2005, Shi Tao has been incarcerated at Chishan Prison, a high-security facility known for holding political prisoners and violent criminals serving long sentences. *Id.* ¶ 46 (stating that the "prison uses a severe system of forced labor, in which prisoners work in dark, dust-filled factories, starting before dawn and working for sixteen hours or more, in conditions intended to destroy their physical and mental capacities."). Shi Tao's status as a political prisoner has been recognized by the Committee to Protect Journalists, Amnesty International, and the United States Department of State Country Report on Human Rights. *Id.* ¶ 48.

**C. Defendants' alleged breach of fiduciary duty**

**1. Callahan's February 2006 Congressional Testimony**

In February 2006, Defendant Callahan, then General Counsel and now Executive Vice President of Yahoo!, testified before a subcommittee of the International Relations Committee of the United States House of Representatives ("the House"). *Id.* ¶¶ 10, 49. Callahan was prepared for his testimony by the law firm of Covington & Burling and "a team of nearly a dozen Yahoo!

4

lawyers as well as other advisors from both inside and outside the Company." *Id.* ¶ 50. The preparation team "anticipated possible lines of questioning by the subcommittee and prepared draft testimony for Callahan." *Id.*

During the hearing, members of the Subcommittee asked Callahan about Shi Tao. *Id.* ¶ 51. Callahan testified that, "[w]hen Yahoo! China in Beijing was required to provide information about a user, who we later learned was Shi Tao, we had no information about the identity of the user or the nature of the investigation. Indeed we were unaware of the particular facts surrounding this case until the news story emerged..." *Id.* ¶ 52. Callahan further explained, "[l]aw enforcement agencies in China, in the United States, and elsewhere typically do not explain to information technology companies or other businesses why they demand specific information regarding certain individuals." *Id.* Callahan submitted a written statement consistent with his oral testimony. *Id.*

Plaintiff alleges that in fact Yahoo! was aware of the nature of the investigation both at the time of the Chinese government's request and afterwards. *Id.* ¶ 54. Plaintiff claims that on April 24, 2004, the Beijing State Security Bureau provided a document ("the Beijing Document") to Yahoo! China stating in part, "Your office is in possession of the following items relating to a case of suspected illegal provisions of state secrets to foreign entities..." *Id.* Plaintiff alleges that the phrase "'state secrets' is commonly used by Chinese officials to denote impermissible speech." *Id.* Plaintiff claims that while the Beijing Document was not translated from Chinese to English or provided to Callahan, a "key member of the Yahoo! team that prepared Callahan for his appearance...had a copy of [it]." *Id.*

**2. Callahan's 2007 Congressional testimony**

In 2007, after an investigation by the House Foreign Affairs Committee revealed that Yahoo! did have information regarding the nature of the investigation when it provided information about Shi Tao to the Chinese authorities in 2004, the Committee held a second hearing on Yahoo!'s role. *Id.* ¶ 58. Callahan testified that during the 2006 hearing it had been his understanding that the Beijing Document "contained no information about the name, profession, activities, or even charges under investigation, and that is how [he] testified." *Id.* ¶

5

Case Number C 08-3658 JF (PVT)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)

61. He also stated that in October 2006, he learned for the first time that the Beijing Document "did contain additional information – that the investigation related to disclosure of state secrets." *Id.* He apologized to the Committee "for not coming back to the Committee once [he] realized...that the demand contained additional information." *Id.* Finally, Callahan clarified that if he "had had this additional information [at the 2006 hearing, he] would have made it clear that we were aware of the general law in question though not the specific nature of the case and not the political nature of the case." *Id.* Plaintiff alleges that no one else at Yahoo! contacted the Subcommittee either orally or in writing to correct Callahan's previous false testimony. *Id.* ¶ 69.

### 3. Harm to Yahoo!

Plaintiff alleges that on November 9, 2007, Yahoo! entered into private settlements with certain Chinese dissidents who had brought legal actions against Yahoo! in the United States. *Id.* ¶ 64. Plaintiff claims that while the terms of the settlements are undisclosed, Yahoo! agreed to pay the dissidents' attorney's fees and provide financial, humanitarian, and legal support to their families. *Id.*

In addition, Plaintiff alleges that the 2007 hearing was widely publicized and that Callahan's failure to cure his earlier testimony "caused the Company to suffer a significant tarnish to its reputation within the financial and business communities and among consumers." *Id.* ¶ 65; *see also id.* ¶ 62 (quoting Representative Tom Lantos' reprimand of Callahan and Yang at the 2007 hearing, "Yahoo! claims this is just one big misunderstanding. Let me be clear – this was no misunderstanding. This was inexcusably negligent behavior at best, and deliberately deceptive behavior at worst."); *see also id.* ¶ 63 (quoting Representative Smith urging Yahoo! "to settle [the lawsuit brought by the dissidents] now and settle it generously in their favor."). Plaintiff also claims that Defendants' actions and failure to act have left Yahoo! vulnerable to potential civil and/or criminal charges for perjury and contempt for Congress. *Id.* ¶ 65.

Finally, Plaintiff alleges that Yahoo!'s stock price dropped following the 2007 hearing. *Id.* ¶ 66. During the two weeks prior to the hearing, Yahoo! stock traded consistently in the low $30 per share range, but by the end of the day of the 2007 hearing, the price had dropped to $29.93. Plaintiff claims that the shares were trading at $25.79 by the end of that week and

remained in the mid $20 range through January 2008. *Id.*

### 3. Plaintiff's demand and the Board's investigation

On November 14, 2007, counsel for Plaintiff sent a letter (the "Demand") to Yahoo!'s Board of Directors ("the Board") alleging that certain unidentified individuals had breached their fiduciary duties to the company in connection with the disclosure in 2002 and 2004 of internet user information about Shi Tao and another dissident. *Id.* ¶ 72; Declaration of Anna Erickson White ("White Decl."), Ex. A.[1] The letter demanded that the Board institute an independent investigation and bring litigation on behalf of Yahoo! against the "persons who were either actively engaged in improper conduct or failed to adequately oversee the operations and internal controls of the Company such that the improper conduct was able to occur." White Decl., Ex. A at 6. On December 20, 2007, the Board responded to Plaintiff's letter acknowledging receipt of the Demand "and assured Plaintiff's counsel that appropriate consideration of and a response to the demand would be made." FAC ¶ 72.

On March 28, 2008, the law firm of Jones Day advised Plaintiff that the Audit Committee was conducting an investigation into the matters described in the Demand and requested that Plaintiff provide the Audit Committee with any additional information he might have relevant to the matters in the Demand. *Id.*; White Decl., Ex. B (stating "Jones Day has been retained to assist the Committee in its investigation."). Plaintiff did not provide additional material, other than a report of his stock holdings. White Decl., Ex. C.

---

[1] On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999). The FAC refers specifically to the correspondence between Plaintiff's counsel and Jones Day, as well as the final letter indicating the Board's rejection of the Demand request. FAC ¶ 72. Neither party challenges the authenticity of the letters reflecting such correspondence, in fact both parties request judicial notice of the same documents. White Decl., Exs. A, B, C, D; *see also* Declaration of Leigh A. Parker, Exs. A, B, C, D. The Court finds that these exhibits properly are incorporated by reference and will take judicial notice of them.

On September 29, 2008, Plaintiff was advised by letter that the Board had conducted an independent investigation that included the collection and review of documents, legal research, and interviews of individuals with knowledge of issues raised in the Demand. White Decl., Ex. D. The letter explained that based on the investigation, the Audit Committee had concluded that it was not in the best interest of Yahoo!'s shareholders for the Company to take any further action with respect to Plaintiff's allegations. *Id.* The Audit Committee reported its investigation and recommendation to the Board, and after considering the recommendation, the Board also determined that further action was not in the best interest of Yahoo!'s shareholders. *Id.*

On July 30, 2008, while the Audit Committee's recommendation still was pending before the Board, Plaintiff filed the original complaint in the instant action. In that pleading, Plaintiff alleged that Defendants breached their fiduciary duties by failing to "exercise oversight" by not preventing the disclosure of electronic information to the Chinese government in 2002 and 2004. Complaint ¶ 75. Defendants then moved to dismiss the original complaint, arguing, among other things, that the claims were barred by the statute of limitations and that Plaintiff lacked standing to bring the litigation because he had failed to meet his burden under Rule 23.1 and Delaware law of showing that the Board wrongfully had refused the Demand. On October 1, 2009, rather than opposing Defendant's original motion to dismiss, Plaintiff filed the FAC.

The FAC does not allege any claims for relief regarding Yahoo!'s disclosure of internet user information in 2002 and 2004, but instead asserts a more limited claim that the Defendants breached their fiduciary duties by failing to ensure the accuracy of Callahan's testimony at the 2006 hearing and by not timely correcting that testimony. FAC ¶¶ 68, 69, 73. Plaintiff also claims that the Board wrongfully refused the Demand. *Id.* ¶ 73.

## II.  LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998), *see also Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336,

8

337-38 (9th Cir. 1997). However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive motion to dismiss). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F. 3d 245, 248 (9th Cir. 1995).

### III. DISCUSSION

**A. Standing pursuant to Rule 23.1[2]**

Defendants contend that Plaintiff lacks standing to bring the instant action because he fails to plead particularized facts establishing that the Board refused his Demand without procedural due care. "The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (citation omitted) (emphasis in original). A derivative claim belongs to the corporation, "and it is the corporation, acting through its board of directors, which must make the decision whether or not to assert the claim." *Furman v. Walton*, No. C 06-3532 SBA, 2007 WL 1455904, at *2 (N.D. Cal. May 16, 2007); citing *Grimes v. Donald,* 673 A.2d 1207, 1215 (Del. 1996), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

In determining whether a complaint alleges, with sufficient particularity, the plaintiff's

---

[2] Defendants do contend that the FAC should be dismissed because Plaintiff failed to verify it in accordance with Rule 23.1(b). *Id.* ("the complaint must be verified..."). The purpose of Rule 23.1's verification requirement is to ensure that a derivative claim has some basis in fact. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966). Accordingly, "noncompliance with formal verification requirements of the federal rules applicable to stockholder actions will not be grounds for dismissal of the complaint where counsel for plaintiff has diligently investigated the possible charges prior to filing the complaint." *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570, 577 (S.D.N.Y. 1972). Here, Defendants do not question that Plaintiff's counsel diligently investigated the possible charges before filing the complaint. In addition, many of the facts alleged in the FAC are supported by documents in the public record. Finally, Plaintiff verified his original complaint and filed verification of the FAC concurrently with his opposition to the instant motion. Parker Decl., Ex. E. Accordingly, the Court finds that Plaintiff's failure to verify the complaint has been remedied sufficiently.

efforts to obtain the action he seeks directly from the directors or comparable authority and the reasons for the plaintiff's failure to do so, "the court looks to the law of the state of incorporation of the company." *Furman,* 2007 WL 1455904, at *2, citing *See In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 990 (9th Cir.1999). The parties agree that because Yahoo! is a Delaware corporation, Delaware law controls as to whether the FAC is factually sufficient. White Decl., Ex. E.[3]

Under Delaware law, "[a] stockholder filing a derivative suit must allege either that the board of directors rejected her pre-suit demand that the board assert the corporation's claim or allege with particularity why the stockholder was justified in not having made the effort to obtain board action." *Furman*, 2007 WL 1455904, at *2, citing *Grimes,* 673 A.2d at 1216. "[T]he demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of the corporation." *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984). In this case, Plaintiff made a demand on the board.

Because Plaintiff made a demand, the Board is entitled to the presumption of the business judgment rule unless Plaintiff can allege with particularity facts creating a reasonable doubt as to whether the Board is entitled to the benefit of the presumption. *See Grimes,* 673 A.2d at 1220; *see also Levine v. Smith,* 591 A.2d 194, 212 (Del. 1991) (the board's refusal of the demand to pursue the action is subject to judicial review according to the traditional business judgment rule), *overruled on other grounds, Brehm v. Eisner,* 746 A.2d 244 (Del. 2000).

"Under the business judgment rule, a court will not substitute its judgment for that of the board, and the board's decision will be upheld unless it cannot be attributed to any rational business purpose." *Furman*, 2007 WL 1455904, at *2, citing *In re Walt Disney Co. Derivative Litig.,* 906 A.2d 27, 74 (Del.2006) (en banc); *Levine,* 591 A.2d at 207. Accordingly, the Court

---

[3] The Court takes judicial notice of Yahoo!'s certificate of incorporation as it is a document that is "not subject to reasonable dispute" and is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Ahcom, Ltd v. Smeding*, No. C-07-1139 SC, 2009 WL 1108658, at *1 n. 1 (N.D. Cal. Apr. 24, 2009) ("District courts routinely take judicial notice of certificates of incorporation.")

must respect Defendants' decision that litigating the claims identified by Plaintiff was not in the best interest of Yahoo!'s shareholders, "unless [the Plaintiff can plead specific facts alleging that] the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available." *Furman*, 2007 WL 1455904, at *2, citing *Brehm v. Eisner*, 746 A.2d 244, 264 n. 66 (Del. 2000) (en banc).

Plaintiff argues that there is reason to doubt that the investigation at issue here was reasonable and conducted in good faith. First, he contends that the members of the Audit Committee could not conduct an adequate and independent investigation of the Demand because to do so would involve an assessment of their own potential liability. *Id.* ¶ 73. Indeed, Plaintiff asserts that most of the members of the Board who considered the Demand also were Board members at the time of the alleged wrongdoing. *Id.* ¶¶ 11-21, 73. However, under Delaware law, a shareholder who makes a formal demand concedes that a majority of the board is sufficiently disinterested and independent and waives any claim that demand is excused. *See Grimes*, 673 A.2d at 1219-20; *Rales v. Blasband*, 634 A.2d 927, 935 n. 12 (Del. 1993) ("Where a demand has actually been made, the stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond"); *Spiegel v. Buntrock*, 571 A.2d 767, (Del. 1990) ("when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation."). Accordingly, the only relevant question is whether the directors acted in an informed manner, with due care, and with a good faith belief that their action was in the best interest of the corporation. *Furman*, 2007 WL 1455904, at *3, citing *Levine*, 591 A.2d at 198.

Second, Plaintiff argues in his opposition papers that because Defendants have not produced an actual report of the Audit Committee's findings and recommendations, it is impossible to determine whether the Audit Committee's investigation was reasonable and whether the Board's decision to refuse the Demand was made on an informed basis. Opp. at 12. Because the FAC itself contains no factual allegations supporting this argument, Plaintiff

effectively concedes the deficiencies of his pleading. Defendants also point out that the Audit Committee, with the assistance of independent counsel, conducted an investigation over several months that included collection and review of documents, interviews of individuals, and legal research.. White Decl., Ex. B (Letter from Jones Day to Plaintiff's counsel stating that "Jones Day has been retained to assist the Committee in its investigation.")

Finally, Plaintiff asserts that because Callahan conceded that his statements at the 2006 hearing were inaccurate and that he failed to correct them in a timely fashion, Callahan's conduct was "disloyal to the corporation." Opp. Mot. at 12, citing *Ryan v. Gifford*, 935 A.2d 258, 272 (Del. Ch. 2007) (finding that participation in concealment of a prior wrongdoing from a shareholder is "disloyal conduct in breach of [a director's] duty as a fiduciary."). Plaintiff argues that the Board's decision to reject the Demand notwithstanding this concession could not have been made reasonably or in good faith. However, Plaintiff misstates the Board's legal obligation. Even assuming that Callahan's action could be characterized as disloyal, it does not follow that the Board's *evaluation, investigation, and rejection of the Demand* must have been undertaken in bad faith. The Board's letter rejecting the Demand explains that the Audit Committee simply "concluded that it was not in the best interest of Yahoo!'s shareholders for the company to take any further action with respect to the allegations in the Demand" and that the Board made the same determination. White Decl., Ex. D.

The FAC does not allege particularized facts showing that the Board's decision not to sue is not protected by the business judgment rule. Accordingly, the motion to dismiss, "must be granted." *Spiegel,* 571 A.2d at 777-78; *Starrels v. First Nat. Bank of Chicago*, 870 F.2d 1168, 1174 (7th Cir. 1989) ("If Courts would not respect the directors' decision not to file suit, then demand would be an empty formality.").[4]

---

[4] Because it concludes that Plaintiff's allegations fail to establish that he has standing to bring the instant action, the Court will defer further analysis of Plaintiff's allegations under the heightened pleading standard articulated in *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

### B. Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), federal courts are instructed to "freely give leave [to amend] when justice so requires." The Court may in its discretion deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.' " *Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532 (9th Cir.2008), quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Defendants contend that the FAC should be dismissed without leave to amend because they clearly identified in their initial motion to dismiss the deficiencies in Plaintiff's demand refusal allegations and Plaintiff failed to remedy those deficiencies in his amended pleading. MTS at 11, citing *Zucco Partners, LLC v. Digimarc Corp*, 552 F.3d 981, 1008 (9th Cir. 2009). In *Zucco*, however, the district court itself had dismissed a previous complaint and had issued an order identifying specifically the insufficiencies of that pleading. *Id.* at 1007-08. In this case, while the FAC is Plaintiff's second pleading, the instant order represents the first judicial comment on Plaintiff's allegations. While the Court has considerable doubt as to whether Plaintiff can allege particularized facts showing that the Board's decision is not protected by the business judgment rule, leave to amend will be granted.

### IV.  ORDER

Good cause therefor appearing, the motion to dismiss is GRANTED with leave to amend. Any amended complaint shall be filed within thirty (30) days of the date this order is filed. IT IS SO ORDERED.

DATED: March 17, 2010

_____
JEREMY FOGEL
United States District Judge